Gregory S. Bishop
650.752.3143
GBishop@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
135 Commonwealth Drive
Menlo Park, CA 94025
T: 650.752.3100
F: 650.853.1038

October 25, 2011

**<u>SUBMITTED UNDER SEAL</u>**

The Honorable Joseph C. Spero
Magistrate Judge
U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *Augme Technologies, Inc. v. Yahoo! Inc.*, Case No. C-09-5386 JCS

Dear Judge Spero:

We write pursuant to the Court's standing order on discovery disputes to provide you a joint letter describing each party's position with respect to a dispute that Augme Technologies, Inc. ("Augme") contends exists between it and Yahoo! Inc. ("Yahoo!") over production of Yahoo! source code for the accused products.

Lead counsel for both parties met and conferred in-person at the offices of Augme's counsel on October 12, 2011.  After five business days, the parties were still working together to resolve at least a portion of the issues raised, and to agree to the content of a joint letter with a detailed summary of the parties' current positions on the remaining issues.  Accordingly, the parties jointly request an additional four business days beyond the five business days set forth in the Court's standing order to fully crystallize the issues and efficiently present them to the Court.

After meeting and conferring, Yahoo! agrees to complete the following:

1.  Yahoo! will produce the source code for the ████████ component by October 28, 2011.

2.  Yahoo! will produce the source code for the █████████ component by November 4, 2011.

3.  Yahoo! will produce the source code for the ███████████████████ ████ components by October 28, 2011.

The Honorable Joseph C. Spero
October 25, 2011
Page 2

4.  Yahoo! will determine all additional source code, if any, necessary to trace the end-to-end data flow for the ad serving process associated with the script.js architecture and produce any code not already produced by November 21, 2011.

**Augme's Position**

As the Court is aware from extensive discussion at the Markman hearing, Augme's claims are directed to adding function to a web page.  Augme identified the "Accused Instrumentalities" as (1) Yahoo!'s Blue Lithium behavioral targeting solution labeled "Ad Revolver" and (2) Yahoo!'s Yield Manager geographical and behavioral ad targeting technology.  By using the Blue Lithium and Yield Manager software, Yahoo! adds targeted advertising to web pages.

A dispute has arisen between the parties as to the scope of discovery to which Augme is entitled.  Augme contends that it is entitled to discovery of all Blue Lithium and Yield manager ad targeting configurations.  Although Augme's Infringement Contentions clearly accuse Yahoo!'s Yield Manager technology of infringement, Yahoo! refuses to provide full discovery into Yield Manager.  To avoid producing highly relevant Yield Manager source code, Yahoo! has contrived a distinction between "configurations" of Yield Manager and refuses to produce source code related to at least one of the configurations.  Yahoo! contends that discovery is limited to only what Yahoo! refers to as "the script.js" configuration of Yield Manager, and refuses to provide discovery into what Yahoo! refers to as the "smart tag configuration."

A second dispute is over the timing and completeness of Yahoo!'s production.  Yahoo! initially insisted that its production was complete and that to the extent something was missing, Augme should identify missing components, and then wait for Yahoo! to query its engineers about the missing components, a process that apparently takes several weeks to accomplish each time. This method is not acceptable because it requires Augme to continue to waste its time and resources analyzing incomplete source code only to be delayed indefinitely when components are found missing.  Yahoo! now agrees to produce complete end-to-end source code, including all modules and libraries, for Blue Lithium and Yield Manager (subject to the scope of discovery determined by the Court with respect to configurations other than "script.js").  Yahoo! asserts that it still needs an additional month to complete this discovery.  Augme requests that the Court order that Yahoo! complete this production by a date certain.

### A.  Scope of Required Documents and Source Code

Augme identified Yahoo!'s Blue Lithium and Yield Manager ad-serving software as the Accused Instrumentalities in its P.R. 3-1 Infringement Contentions.  (Ex. 1 at 2.)  By viewing publically available information and reverse engineering, Augme identified examples of how Blue Lithium and Yield Manager add targeted advertising to web pages in its P.R. 3-1 infringement charts. Augme requested production of documents related to the design of Yahoo!'s "TARGETING SYSTEM", which Augme defined as "any and all software applications used by YAHOO! for

The Honorable Joseph C. Spero
October 25, 2011
Page 3

user targeting over the Internet . . . that can add, or continue to add function to a web site, web page or web pages for the purpose of user targeting . . .including, without limitation, the YAHOO! products known as Blue Lithium, Ad Revolver, Advertising Products and Services, Ad Targeting Technology, Yield Manager, and any other user targeting technology employed by Yahoo!." This request would include source code sufficient to show the entire operation of Yahoo!'s Accused Instrumentalities, including the Yield Manager ad serving software.

Yahoo! has unilaterally limited its discovery to the specific examples shown in the preliminary infringement contentions, ignoring the Accused Instrumentalities set forth in the Infringement Contentions. Since Augme did not have Yahoo!'s source code, the detailed claim charts were prepared using only publically available information. Not surprisingly, Yahoo! does not provide details of its ad serving software to the public. Yahoo! now admits that it is actively withholding portions of the Yield Manager ad serving software. This withholding of information has had two negative effects. First, it led to a mismmash of source code produced that cannot be traced using the software evaluation tools provided. Second, the mismmash of source code excludes portions of source code that would have demonstrated that Yahoo! has other configurations of Yield Manager. In other words, Yahoo! is withholding the very information that Augme needs to prepare complete claim charts for the accused instrumentalities.

Augme contends that the relevant source code that should be produced is the entire end-to-end ad server software for Blue Lithium and Yield Manager, including all versions of those products for the relevant period. The patent claims go to the question of how Yahoo! handles requests to serve ads, and how it fulfills those requests. Yahoo!'s production should include all of the source code, including all required code modules and libraries necessary for end-to-end ad serving. In addition to being relevant to questions of infringement, such source code will likely provide insight into how Yahoo! determines the prices it charges for its advertising services.

By way of example, the source code that Yahoo! should produce includes that which is represented by the data flow shown at YAH 0945032 and YAH-0944955. (Exs. 2 and 3.) That data flow shows the ad-serving data flow for one particular version of Yield Manager, but Yahoo! should produce the source code involved in the end-to-end data flow for each version of Yield Manager as well as each version of Blue Lithium. Yahoo! admits that it has more updated data flows and that source code should be produced also. The source code production should include all code modules and libraries necessary to compile the source code for each version.

Yahoo! contends that Augme is only entitled to source code for the "script.js" configurations of its Yield Manager ad-serving systems and not code for the "smart tag configuration." Augme does not agree with Yahoo!'s distinctions. These are both part of the Yield Manager ad serving systems and should both be produced. Moreover, to the extent the end-to-end ad-serving systems employ Right Media Exchange ("RMX") software, Augme is entitled to it as it part of the end-to-end data flow as it is necessary to understand how Yahoo! serves advertising to web pages, and because of its relevance to other issues, such as damages. Yahoo! describes RMX as

The Honorable Joseph C. Spero
October 25, 2011
Page 4

a system that: "allows buyers to bid for an impression using their own bid valuation technology. The buyer's system can decide whether to bid for an impression and what price to pay for it, and then can place a bid into RMX in real time." Thus, there is no question that RMX technology is relevant to the issue of damages and how Yahoo! prices its ad placing services. (Ex.4.)

Yahoo! apparently contends that Augme should have been able to reverse engineer Yield Manager to determine that it uses a "smart tag" configuration as well as the "script.js" configuration. That is not so. Indeed, Yahoo! argues that even the act of understanding and producing its *own* source code is difficult and time consuming, yet Yahoo! contends that Augme could fully understand the intricacies of Yahoo!'s code by reverse engineering. In preparing its preliminary infringement contentions, Augme had no reason to know that it should continue the difficult and expensive process of reverse engineering to discover additional configurations of Yield Manager. The purpose of discovery is to provide such details. Notably, Yahoo! points to no public or confidential information to support its attorney's explanation that RMX does not use the "script.js" configuration. Knowing of the existence of RMX is not sufficient to appreciate that it uses a "smart tag" configuration. Moreover, even if Augme had known to look at yahoo.mail.com to find a non-script.js example, the code shown in Ex. 16 provides no indication of a "smart tag" configuration or that it operates differently from the "script.js" example. Yahoo!'s explanation that it employs "yieldmanager.com" instead of "yieldmanager.net" provides no such indication. Instead, Yahoo!'s explanation highlights the point that "Yield Manager" (whether it is yieldmanager.net or yieldmanager.com) is used in Yahoo!'s source code, and as Augme stated in its Infringement Contentions, the Accused Instrumentalities include "Yield Manager as seen in [Yahoo!'s] online source code." (Ex. 1 at 2-3.) .

Yahoo!'s gamesmanship on this issue is apparent when comparing its explanations here with its discovery responses. Here, Yahoo! makes clear the distinction between the "script.js" configuration of Yield Manager and the "smart tag" configuration of Yield Manager. In its discovery responses, however, Yahoo! was deliberately vague, promising to provide documents related to the "Yield Manager Method" and the "Blue Lithium Method." It drew no distinction between various configurations of the Yield Manager Method. It is apparent that Yahoo! carefully crafted its response to hide the existence of other configurations.

Even were Yahoo!'s contrived distinction between configurations of Yield Manager supportable, this Court broadly construes the scope of discovery in patent infringement case. *See, e.g., Bd. of Trs. of Leland Stanford Jr. Univ. v. Roche Molecular Sys. Inc.*, 237 F.R.D. 618, 621 (N.D.Cal.2006) (compelling production of documents under Rule 26 in patent infringement action); *Advanced Micro Devices, Inc. v. Samsung Electronics Co., Ltd.*, 2009 WL 1834147, at *2-3 (N.D.Cal. June 24, 2009). Augme should be permitted discovery on these similar Yield Manager configurations. Yahoo! has provided no evidence that its undisclosed "smart tag" or other withheld configurations are not reasonably similar to the "script.js" configuration. Yahoo! relies on Eastern District of Texas, but cases from that district support broad discovery. In *Epicrealm v. Autoflex,* 2007 WL 2580969 (E.D.Tex.), the Court stated that "[c]ontrary to

The Honorable Joseph C. Spero
October 25, 2011
Page 5

*Caritas*, the Court finds no bright line rule that discovery can only be obtained if related to an accused product identified in a party's PICs." *Id* at *3.  Rather, the District Court concluded that "the scope of discovery may include products and services . . . 'reasonably similar' to those accused in the PICS.  *Id.  Honeywell* is cited by Yahoo!, but it also supports the proposition that "there is no brightline rule that discovery is permanently limited to the products specifically accused in a party's PICs"  and that discovery into reasonably similar products is allowed.  *Honeywell Int'l, Inc. v. Acer Am., Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009).  Here, the configurations are not just reasonably similar, they are same product.  Yahoo! is solely in possession of the details of the various configurations, but has given no evidence of significant differences.

### B.  Inadequacies of current production

There are three areas of inadequacy in Yahoo!'s source code production.  *First,* for those portions of the source code that Yahoo! has agreed to produce, it has failed to provide complete source code, including all necessary modules and libraries.  The missing source code has been identified in correspondence with Yahoo! since August 19, 2011 (Ex. 5), and Yahoo! has spent the last two months "looking into it."  *Second,* Yahoo!'s proposed solution for this problem is for Augme to undertake an extensive analysis to try to determine the potentially hundreds of missing modules and libraries so Yahoo! can "look into it."  This is inefficient, costly, and unnecessary.  *Finally,* while continuing to insist that it has met its source code production obligations, Yahoo! will not or cannot identify specifically which source code it is withholding from production.  This stall tactic prevents any timely and meaningful meeting and conferring.

Through meeting and conferring the parties have reached agreement as to when Yahoo! will finally investigate and produce its documents and source code.  Augme requests that the Court order Yahoo! to make a full production of its source code by a date certain.

Augme first identified Yahoo!'s insufficient production on August 19, 2011.  (Exs. 5-11.)  After months of "looking into the issues," it became clear that Yahoo! would only produce some of the Yield Manager source code.  So, on October 12, 2011, the parties met-and-conferred in person.  At the meeting, Augme again described the deficiencies in Yahoo!'s source code production.  Augme asked Yahoo! to identify the portions of the code depicted in an ad-serving data flow diagram (that Augme first identified on August 19, 2011) that Yahoo! was withholding.  Though Yahoo! claims to have fully fulfilled its source code production requirement, it was still not able to identify what it had and had not produced.  Yahoo! now wants to start that analysis and not complete it until late November, the day before the scheduled Markman Hearing for the counterclaim patents.  This lackadaisical approach to its disclosure obligations makes clear that Yahoo! is engaged in a well-worn delay tactic.  The time is long past for Yahoo! to stop delaying and obfuscating and to finally produce the full and complete source code of the accused Yield Manager and Blue Lithium ad serving software.

The Honorable Joseph C. Spero
October 25, 2011
Page 6

This Court issued a claim construction order on September 13, 2011 (Dkt. No. 189), and Augme's discovery should now proceed in earnest. Yahoo!'s argument that no depositions have been taken only highlights the delay caused by Yahoo!'s failure to provide source code. It makes little sense to take technical depositions without first obtaining the relevant source code. Yahoo!'s continued delay in production will be prejudicial to Augme's discovery process. Moreover, contrary to Yahoo!'s contention, Augme has only amended its infringement contentions twice – each time by agreement. Augme has also provided additional information when requested by Yahoo! Yahoo!'s contention that it is too late for Augme to make further changes when Yahoo! finally produces its source code is unsupportable.

###### C. <u>Conclusion</u>

Augme respectfully requests that the Court require Yahoo! to provide full and open discovery into the Accused Instrumentalities. In particular, Augme asks the Court to Order Yahoo! to produce all of the source code and technical documents related to the end-to-end ad serving process of Blue Lithium and Yield Manager, including the source code for the so-called "smart tag" configuration and for Right Media Exchange.

## <u>Yahoo!'s Position</u>

Augme accuses two Yahoo! systems of infringement — Blue Lithium, and what Augme calls "Yield Manager" (more accurately, the "script.js" front-end system). Discovery regarding these systems is not disputed — Yahoo! has produced or will shortly produce their end-to-end code. The present dispute concerns Augme's attempt to expand discovery to cover *unaccused* systems, in particular the RMX ("Right Media Exchange") front-end. That system has long been publicly known, but Augme did not accuse it. Augme is not entitled to discovery into unaccused systems.

Yahoo!'s advertising systems generally consist of two components: 1) a "front-end" that interacts with end users' computers; and 2) a "back-end" that, among other things, selects advertisements. In its infringement contentions, Augme accuses the "script.js" front-end of infringing its two-code-module invention. As the required "first" code module, Augme points to webpage code that requests a component named "script.js." The "script.js" component, which requests an ad from a back-end system, is allegedly the "second" code module.

The "script.js" front-end can retrieve advertisements from at least two back-end systems: the ▬▬▬▬▬▬▬ ad servers. Yahoo! has already produced or agreed to produce complete code for the "script.js" front-end and the back-end components that may service its requests (*e.g.*, ▬▬▬▬▬) by November 21, 2011. Thus, with respect to Yahoo!'s source code for the accused systems, there is no true dispute and no need for the Court's intervention.

Augme, however, is attempting to use this non-existent dispute to expand its infringement contentions by obtaining discovery on a *different* front-end ad system — the RMX front-end.

The Honorable Joseph C. Spero
October 25, 2011
Page 7

That system does not use the "script.js" structure that Augme accused, and though it has long been publicly available, Augme chose not to accuse it. As the infringement contentions determine the scope of discovery, and RMX (and other Yahoo! front-ends) are outside the infringement contentions, they are beyond the scope of discovery.[1]

It is far too late for Augme to attempt to expand this lawsuit. Augme served its infringement contentions one-and-a-half years ago and then amended its contentions *four times*, yet each time limited its allegations to the "script.js" front-end. Yahoo! has developed its defenses to Augme's allegations against the "script.js" accused system. It would be enormously prejudicial to permit Augme to obtain discovery on unaccused front-end systems now — nearly *two years* into this lawsuit, and *after* claim construction — when Augme had more than ample opportunity to investigate other systems based on publicly-available information. Nor should Augme be permitted to circumvent the Patent Local Rules' requirement of a motion and a "timely showing of good cause" to amend infringement contentions. *See* Patent L.R. 3-6.

###### A.  Yahoo! Has Already Agreed to Produce End-to-End Source Code for the Accused Systems

There is no true dispute with respect to source code for the Blue Lithium or "script.js" systems. In its original production, based on Augme's infringement contentions, Yahoo! searched for and produced end-to-end code for these embodiments. Augme has now identified specific additional code modules it believes are missing and Yahoo! has agreed to produce them by October 28, 2011 (or November 4 for ███████████). Yahoo! has further agreed to re-review the end-to-end "script.js" process with its engineers to see if there is any other code missing, and to produce any such code by November 21, 2011.[2] Yahoo! is presently conducting these interviews.

Given that Yahoo! has agreed to produce end-to-end code, asking Yahoo! to identify what it is purportedly "withholding" (as Augme does in its portion of the letter) makes no sense. Yahoo! is not withholding anything that is part of the end-to-end ad process for Blue Lithium or the "script.js" embodiment. To avoid future disputes, however, Yahoo! confirms that it will produce (or has produced) the components set forth in Exhibit 12.

###### B.  Augme Is Not Entitled to Source Code for the RMX Front-End System or Any Other Unaccused Systems

Augme is not entitled to discovery into unaccused systems. In its infringement contentions, Augme identified a particular Yahoo! front-end — the "script.js" embodiment — as meeting the two "code module" limitations. Augme has never accused any other purported code modules of infringement. Front-end systems (such as RMX) that do not use the "script.js" structure are

---

[1] The RMX front-end employs another variant of the ████ back-end ad server.

[2] Augme does not appear to contend that any Blue Lithium source code is missing.

The Honorable Joseph C. Spero
October 25, 2011
Page 8

beyond the infringement contentions and, as courts have made clear, not subject to discovery. *Honeywell Int'l, Inc. v. Acer Am., Corp.*, 655 F. Supp. 2d 650, 656 (E.D. Tex. 2009) (to obtain discovery into unaccused products, plaintiff must show prior disclosure of "specific theory of infringement," "reasonabl[e] similar[ity] to that theory," and investigatory diligence); Ex. 13 (*Orion IP, LLC v. Staples, Inc.*, 2:04-cv-297 (E.D. Tex.), slip opinion July 7, 2006, at 2-4) (denying discovery into unaccused but publicly-available websites).

Moreover, it is far too late for Augme to amend its infringement contentions to include new systems. Infringement contentions must be served "14 days after the Initial Case Management Conference." Patent L.R. 3-1. Amendments may be made only upon motion and "a timely showing of good cause." Patent L.R. 3-6. Augme has not made such a motion and cannot show good cause, especially given that information about RMX is publicly available (as discussed below). Nor can Augme circumvent this by casting an attempt to expand its contentions as a discovery dispute. This is not the proper vehicle for expanding infringement contentions.

Augme's assertion that Yahoo! has prevented Augme from investigating the RMX front-end or other front-ends by "withholding" documents is undercut by the facts. The Right Media website has been available since at least 2003, and Yahoo!'s acquisition of Right Media in 2007 was well-publicized. Yahoo! has also heavily promoted RMX. (*E.g.*, http://advertising.yahoo.com/article/right-media-exchange.html.) Yahoo!'s document production contains at least **28,000** documents containing the words "RMX," "right media," "smart tag," or "smart tags." Augme cannot seriously contend that Yahoo! has concealed any of its ad serving products in light of these facts. Further, far from being "vague" or indicating "gamesmanship," Yahoo!'s discovery responses have been crystal clear that Yahoo! would produce documents for "only the 'Yield Manager Method' . . . *identified in plaintiff's claim charts*." (Ex. 14 at, *e.g.*, 2, 5-6 (emphasis added).) Augme never took issue with this. Indeed, Augme only served an interrogatory directed to Yahoo!'s *other* ad systems less than *two weeks* ago.

Augme also contends that it could not have accused RMX without Yahoo!'s confidential information, but that is contradicted by Augme's existing infringement contentions. There, Augme developed its infringement theory for the "script.js" front-end based on "publicly available information" and "reverse engineering," even though "back-end" code for that system is not publicly available. (Ex. 15 at 3.) It could have done the same for RMX — particularly as Augme began its infringement investigation in *2007*. (*Id.*) For example, the Yahoo! Mail website displays RMX advertisements. Using a freely-available web browser tool to inspect the site's source code (as Augme did for the "script.js" system), Augme could have analyzed the front-end RMX code. (Ex. 16 (illustrating Yahoo! Mail web site and excerpt of publicly-available RMX ad placement code).)[3]

---

[3] As illustrated in Ex. 16, RMX ad placement tags employ the "yieldmanager.com" domain. The "script.js" structure employs the "yieldmanager.net" domain.

The Honorable Joseph C. Spero
October 25, 2011
Page 9

Augme further argues that RMX is accused because it is part of "Yield Manager." Augme ignores that, in its infringement contentions, it expressly defined the accused system *by its structure*, not by its purported brand name:

> The exact name of the present method cannot be specifically identified because the names now used by Yahoo! for its targeted advertising are generic, rather than branded, like Blue Lithium, and can be changed at any time. Thus, Yahoo!'s previous and present targeting method *can only be described by what has been observed*. Therefore, the current method is identified as Yield Manager *as seen in its online source code*.

(Ex. 15 at 2-3.) While RMX and the "script.js" embodiment request advertisements from (different) "yieldmanager" domains, they are not merely different configurations of the same product, as Augme asserts. They are different products, using different front-ends, different ad placement mechanisms, different ad marketplaces, and different ads.

Augme also misplaces the burden of formulating infringement contentions when it asserts that it would have been too time-consuming to investigate Yahoo!'s other products. It was Augme's duty to develop its infringement theory early in the case; it is not Yahoo!'s duty to speculate about what other products Augme might want to investigate. *Alberta Telecomms. Research Centre v. Rambus, Inc.*, 2007 U.S. Dist. LEXIS 89283, at *2-3 (N.D. Cal. Nov. 19, 2007) ("Patent Local Rule 3-1 require[s] parties to crystallize their theories of the case *early in the litigation and to adhere to those theories* once they have been disclosed." (emphasis added)). Augme simply failed to diligently investigate. Augme's attempt to analogize the complexity of investigating the front-end code to Yahoo!'s production burden ignores the fact that the front-end mechanisms are far simpler than the back-end systems (as confirmed by Augme's ability to reverse-engineer "script.js").

Augme's cited cases are inapposite. The issue in *Board of Trustees* was whether plaintiff had waived the privilege — not whether it was entitled to discovery of unaccused products. 237 F.R.D. 618, 620 (N.D. Cal. 2006). In *AMD*, discovery was permitted because defendant "had notice that [plaintiff] accused what is purportedly the *same process* in a different product." 2009 WL 1834147, at *3 (N.D. Cal. June 24, 2009) (emphasis added). Here, Augme seeks discovery into products using a *different* process. Similarly, in *Dr. Systems*, plaintiff had expressly noted in its infringement contentions that there were systems for which it had insufficient information and reserved its right to accuse them later. 2008 WL 1734241, at *3 (S.D. Cal. Apr. 10, 2008). Augme gave no such notice here. Finally, while Augme cites *Epicrealm*, the subsequently-decided *Honeywell* case clarifies that a plaintiff seeking discovery into unaccused products must show prior disclosure of a "specific theory of infringement," the unaccused products' "reasonabl[e] similar[ity] to that theory," and investigatory diligence. *Honeywell*, 655 F. Supp. 2d at 656. That burden falls on *Augme*, not Yahoo! (*id.*), and Augme cannot make that showing.

Allowing Augme to engage in a fishing expedition and expand its infringement contentions now

The Honorable Joseph C. Spero
October 25, 2011
Page 10

would gravely prejudice Yahoo!, particularly as Augme has offered no explanation for its
extraordinary delay.  This case has been pending for two years, Augme has already repeatedly
amended its infringement contentions, and *Markman* proceedings are complete.  At some point,
Augme's infringement allegations have to be "final."

> C.  Given that Yahoo! Has Agreed to Dates for Source Code Supplementation, There Is
> No Need for the Court to Set Deadlines

As set forth in the introduction to this letter, Yahoo! has agreed to produce certain specific
components by October 28, 2011 (and November 4), and to produce any remaining components
of the end-to-end ad serving process for the "script.js" front-end by November 21, 2011.  Given
this, there is no need for Court-imposed deadlines.

Yahoo! is presently re-interviewing engineers to determine what code, if any, is missing.
Yahoo! then intends to review the execution flow through the "script.js" architecture with
engineers.  This is not a simple task.  Yahoo!'s advertisement products are complex systems built
to handle massive numbers of ad requests and consist of ███████████████
███████████████████████████████.  Ensuring that end-to-end code is collected
will involve (and has involved) lengthy interviews with engineers who have other business
responsibilities.  Yahoo! is proceeding as quickly as it can.  In fact, Yahoo!'s e-discovery vendor
is currently loading the code for ████████████ and other components onto the laptops.

Augme appears to be manufacturing urgency in order to gain discovery leverage over Yahoo!.
Augme's past conduct belies its complaints of delay.  For instance, although this case has been
pending since November 2009, Augme has taken no fact depositions on its claims.  Augme also
has yet to review the Blue Lithium source code that Yahoo! made available in August.  Augme
can hardly claim that purportedly missing source code is prejudicing its case when it has delayed
its investigation for so long.  The additional time that Yahoo! needs to complete its investigation
will be comparatively negligible.

Conclusion

Yahoo! has already agreed to dates to produce supplemental code.  The deadlines are reasonable
in light of the complexity of Yahoo!'s task.  There is no true dispute as to these issues, and the
Court's involvement is unnecessary, as Yahoo! will produce all code to which Augme is entitled.

Augme is not entitled, however, to code beyond the accused Blue Lithium and "script.js"
systems.  Augme has had four years to examine Yahoo!'s ad systems.  Yahoo! has relied on
Augme's infringement contentions for a year-and-a-half, and Augme has had *four* opportunities
to amend its contentions to add other systems.  There is no justification for Augme's attempt to
expand its case at this advanced stage when it could have analyzed publicly-available code and
information regarding other Yahoo! systems long ago.

LIBA/2230667.6

10

The Honorable Joseph C. Spero
October 25, 2011
Page 11


Respectfully submitted,

/s/ *Gregory S. Bishop*                              /s/ *Rachel Krevans*
Gregory S. Bishop                              Rachel Krevans
Attorney for Plaintiff and Counterclaim        Attorney for Defendant and
Defendant Augme Technologies, Inc.             Counterclaim Plaintiff Yahoo! Inc.
and Counterclaim Defendant
World Talk Radio, LLC


## GENERAL ORDER ATTESTATION

I, Gregory S. Bishop, am the ECF User whose ID and Password are being used to file this Joint Letter of October 25, 2011 and Exhibits Thereto in compliance with General Order 45, X.B., I hereby attest that Rachel Krevans has concurred to its filing.

/s/ *Gregory S. Bishop*
Gregory S. Bishop