**FILED**

AUG X 8 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGME TECHNOLOGIES, INC., | Case No.  C-09-5386 JCS |
| Plaintiff, | REDACTED |
| | **ORDER GRANTING YAHOO!'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; DENYING AUGME'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| YAHOO! INC., | |
| Defendants. | **[Docket Nos. 291, 298]** |

## I.   INTRODUCTION

On November 16, 2009, Plaintiff Augme Technologies, Inc. ("Augme") filed a complaint alleging infringement by Defendant Yahoo! Inc. ("Yahoo") of the following patents:  1) U.S. Patent Nos. 6,594,691 ("the '691 patent") and 2)  7,269,636 ("the '636 patent") (collectively "the patents-in-suit").  The '636 patent is a continuation of the '691 patent.

Two motions are presently before the Court: 1) Yahoo!'s Motion for Summary Judgment of Non-Infringement ("Yahoo! Motion"); and 2) Augme's Motion for Partial Summary Judgment ("Augme Motion").[1]  The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).  On July 20, 2012, the Court held a hearing on the Motions. Having considered the record, and the arguments made at the hearing, the Court GRANTS Yahoo!'s Motion for summary judgment.  In light of the Court's conclusion that Yahoo's accused products do not infringe the patents in suit, the court exercises its discretion and declines to address the invalidity of the '636 and the '691 patents.  *See, Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1370-71 (Fed. Cir. 2003).  Therefore, the court dismisses Declaratory Judgment Claim 2 (Declaratory

---

[1]The parties oppose each other's motions.  The opposition briefs will be referred to as "Yahoo! Opp." and "Augme Opp."  The reply briefs will be referred to as "Yahoo! Reply" and "Augme Reply."

1  Judgment of Invalidity of the '691 and '636 Patents) of Yahoo!'s counterclaim without prejudice. *See*

2  Dkt. No. 91 at 12. Accordingly, Augme's Motion is DENIED.

3  **II.    OVERVIEW OF THE TECHNOLOGY & THE PARTIES' POSITIONS**

4       **A.    Augme's Patents**

5       The invention disclosed in Augme's '691 Patent is entitled "Method and System for Adding

6  Function to a Web Page." Based on the same specification, the '636 patent claims a "Method and

7  Code Module for adding Function to a Web Page." The patents-in-suit disclose a system and method

8  in which a Web page is downloaded to a client computer platform includes "an easily distributed

9  software code module." '691 Patent at 2:29-32.

10      There is no dispute that the claimed method and system involve three computers that interact

11 with each other over the internet. The first computer is a web site publisher, *e.g.*, sfgate.com. The

12 second computer is a computer that downloads the web site for viewing. The third computer, known

13 in the patent as the "server system," represents the central server that provides the added function

14 such as the advertising. Augme Opp. at 3.

15      The specifications of the Augme patents provide an example of how the invention operates.

16 In the example, a web surfer visits a web page on Texas-style cooking. '636 Patent at 12:62-13:5. A

17 "first code module" (*i.e.*, a computer program) is embedded within the web page that is to be

18 downloaded. '636 Patent at 6:10-20. In the first step the web page containing the embedded code is

19 downloaded to the web surfer's web browser, and the first code module is automatically executed,

20 causing the browser to request a second program or "second code module" from the server system.

21 *Id.* at 6:21-26. As part of the request for the second code module, information such as the type of

22 operating system, the type of browser, and other information about the user is sent to the server

23 system. *Id.* at 4:33-40; 6:30-34; 10:66-11:2. The server assembles the second code module having a

24 "service response" (which, under this Court's construction of this term, indicates whether the present

25 web page has permission to access the requested function). *Id.* at 6:43-12:33. The server system

26 assembles the second code module so that it is tailored to the user and compatible with, for example,

27 the user's web browser and/or computer operating system. *Id.* at 11:63-12:6. The second code

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

module is also assembled to include a denial, predetermined, or customized "service response." *Id.* at 67:60-8:2; 8:41-52; 9:7-33; 12:4-6.

After it is downloaded, the second code module is executed and adds the function - *e.g.*, an internet radio player featuring country music - to the web page devoted to Texas-style cooking. *Id.* at 12:43-13:5.

### 1. Asserted Claims of the '636 Patent

Augme asserts 1-3, 9, 14, 20 and 25 of the '636 Patent. Joint Statement of Undisputed Facts ("JSUF") ¶ 8. The asserted claims are all method claims. Claims 1, 14, and 20 are independent.

Claim 1 provides:

A method of operating a computer network to add function to a Web page comprising:

> downloading said Web page at a processor platform, said downloading step being performed by a Web browser;
>
> when said Web page is downloaded, automatically executing a first code module embedded in said Web page;
>
> said first code module issuing a first command to retrieve a second code module; assembling, in response to said issuing operation, said second code module having a service response;
>
> said first code module issuing a second command to initiate execution of said second code module; and
>
> initiating execution of said second code module at said processor platform in response to said second command.

'636 Patent, Cl. 1.

Claim 14 of the '636 Patent provides:

A method of operating a computer network to add function to a Web page comprising:

> downloading said web page at a processor platform, said downloading step being performed by a Web browser; when said Web page is downloaded, automatically executing a first code module embedded in said Web page;
>
> said first code module issuing a command to retrieve a second code module;
>
> receiving, at a server system, information characterizing at least one of said processor platform and said Web browser;
>
> assembling, in response to said issuing operation, said second code module having a service response, said assembling operation being performed at a server system, and said assembling operation assembling said second code module in response to said information

downloading said second code module to said processor platform; and

initiating execution of said second code module at said processor platform.

Claim 20 of the '636 Patent requires:

A method of operating a computer network to add function to a Web page comprising:

downloading said Web page at a processor platform, said downloading operation being performed by a Web browser;

when said Web page is downloaded, automatically executing a first code module embedded in said Web page, wherein execution of said first code module initiates retrieval of a second code module;

receiving, at a server system, information from said processor platform;

providing, from said server system, said second code module having a service response, said service response being formed in response to said information;

downloading said second code module to said processor platform; and

initiating execution of said second code module at said processor platform.

## 2. Asserted Claims of the '691 Patent

Augme asserts claims 21 and 25 of the '691 Patent. JSUF ¶ 9. Because the Court has previously found claim 19 to be indefinite, Yahoo! does not address claim 19 (or dependent claim 20) in its Motion. All asserted claims of the '691 Patent are apparatus claims. Claim 21 is the only independent claim at issue in Yahoo!'s Motion.

Claim 21 provides:

A computer network comprising a first processor platform for maintaining a Web page accessible through a Web address, said Web page including a first code module embedded therein, and a second processor platform in communication with said first processor platform via a network connection, said second processor platform supporting a Web browser, said Web browser being configured to download said Web page and execute said first code module, wherein:

said first code module issues a first command to retrieve a second code module; and

said computer network further comprises a server system in communication with said second processor platform for receiving said first command, said server system including:

a database having stored therein a service response in association with said Web

United States District Court
For the Northern District of California

address;

a processor, in communication with said database, for assembling said second code module having said service response; and

means for communicating said second code module to said second processor platform, such that upon retrieving said second code module, said first code module issues a second command to initiate execution of said second code module at said second processor platform.

**B.     The Accused Products**

Augme accuses two Yahoo! ad serving systems of infringing its patents:  RMX and APT. *See* JSUF ¶¶ 10-12; Declaration of John K. Blake ("Blake Decl."), Exhibit C ("Ex. C") at 2.[2]

According to Yahoo!, its two advertisement systems can be described as follows:

**RMX**.  RMX is a system used to serve advertisements for display on third-party web pages over the Internet. (Ex. C at 2-3.)

**APT**.  APT is another Yahoo! system for serving advertisements for display on third-party web pages over the Internet. (Ex. C at 2-3.)  At a high level, the process by which an ad is served from APT is similar to that of RMX.

---

[2]Augme only asserts '636 Patent claims 14, 20, and 25 against RMX.   Augme asserts '636 Patent claims 1-3, 9, 14, 20, and 25, and '691 Patent claims 21 and 25, against APT.  Yahoo! Motion at 7, n.3 (citing Ex. C at 3-4).  Augme's Third Amended Infringement Contentions also accuse two other Yahoo! systems – BlueLithium AdRevolver ("AdRevolver") and MME – of infringement, but Augme's experts have not expressed opinions about how these products infringe, nor have they provided any theory of damages as to those systems.  Thus Yahoo! argues that it is entitled to summary judgment of non-infringement as to these systems. Motion at 7, n.3.  The Court agrees.  Summary judgment is therefore granted as to those systems.

United States District Court

For the Northern District of California

Yahoo! Motion at 7-8.

## C. Yahoo!'s Summary Judgment Motion

### 1. The Motion

Yahoo! argues that its two systems for serving web advertisements, RMX and APT, do not infringe the Augme patents as a matter of law. First, Yahoo! argues that Augme's infringement allegations fail under the doctrine of "divided (or 'joint') infringement." Under the doctrine of divided infringement, if two entities are required to practice a claim, there can be no direct infringement unless one entity has control over the other. Yahoo! Motion at 1. (citing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (reversing jury verdict of infringement on divided infringement grounds); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007) (affirming summary judgment on divided infringement grounds)).

Yahoo! argues that each asserted method claim of the '636 patent requires at least two entities in order to practice the claims: 1) the end user or web surfer that uses a web browser to download a web page and initiate an advertisement request; and 2) a server to respond to the request. Yahoo! argues that there can be no genuine dispute that it does not control a web surfer's decision to download a web page displaying a Yahoo!-served ad; therefore, under the doctrine of "divided infringement" there can be no liability.

Yahoo! argues that the asserted system claims of the '691 patent produce the same result. Motion at 2. The asserted claims of the '691 patent require at least two computers: 1) a second "processor platform," which belongs to the web surfer; and 2) a "server," which Augme alleges belongs to Yahoo!. Yahoo! argues that it does not "make" or "use" the web surfer's computer, and therefore, it cannot be liable for "making" or "using" the claimed system. *Id.* (citing *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l., Inc.*, 631 F.3d 1279, 1286-88 (Fed. Cir. 2011) (finding non-infringement where defendant did not "provid[e] or "put[] into service" the end-user's personal computer). Thus, divided infringement is also appropriate with regard to the '691 patent. Yahoo!

1  Motion at 2.

2      Yahoo! next argues that its systems cannot infringe the asserted patent claims as a matter of

3  law under this Court's definitions of the terms "service response" and "embedded in [a] web page."

4  *Id.* Under this Court's claim constructions, Augme's asserted claims require a "service response" that

5  "indicates whether the downloaded web page is permitted to have access to a requested function, and

6  if yes, how the function should be presented on the web page." *Id.* Yahoo! argues that Augme has

7  failed to identify any response provided by Yahoo!'s systems that indicates permission to access a

8  requested function. *Id.* Instead, Augme "identifies the served advertisement as both the response and

9  the function, failing to distinguish between those distinct elements in the claims." *Id.*

10     Similarly, under the Court's claim constructions, the asserted claims of Augme's patents

11 require a first code module "embedded," (*i.e.*, written into the HTML), within a web page that causes

12 the browser to retrieve a second code module. *Id.* Yahoo! points to the fact that what Augme

13 identifies as "first code modules," 1) either do not retrieve what Augme identifies as the "second"

14 code module, or 2) are not written into the HTML of the web page, but are externally linked. *Id.*

15 Yahoo! argues that there can be no infringement as a matter of law due to Augme's failure to identify

16 a "service response" or an "embedded" first code module in RMX and APT. *Id.*

17     Finally, Yahoo! argues that because there can be no direct infringement – either under the

18 doctrine of divided infringement or under the Court's claim constructions – Yahoo! cannot be liable

19 for contributory infringement or induced infringement. *Id.* (citing *Dynacore Holdings Corp. v. U.S.*

20 *Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).

21         **2.    Augme's Opposition**

22     Augme counters that Yahoo! is not entitled to summary judgment because there are factual

23 disputes that preclude summary judgment on the question of whether the accused Yahoo! products,

24 APT and RMX, infringe the asserted claims of the patents-in-suit. Augme Opp. at 1. Augme argues

25 that Yahoo!'s infringement arguments are wrong as a matter of law because the "divided" or joint

26 infringement doctrine is inapplicable to the asserted claims. Specifically, Augme argues first that the

27 divided infringement argument is "premature" because the Federal Circuit is expected "to rule

28 imminently on the appropriate analysis for divided infringement at any time." *Id.* at 6. Second,

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1 | Augme argues that Yahoo!'s assertion that some of the claim limitations are performed by computer

2 | users or web surfers is factually wrong and thus Yahoo!'s legal authority on divided infringement is

3 | inapplicable. *Id.* Third, Augme argues that Yahoo!'s divided infringement argument ignores the

4 | control that it exercises over the actions of its customers who use its RMX and APT networks:

5 | "Yahoo!'s complete control of the ad serving process" precluded summary judgment on divided

6 | infringement grounds. *Id.*

7 | With respect to Yahoo!'s arguments regarding this Court's claim constructions, Augme

8 | counters that both the "service response" and "embedded in [a] web page" limitations are satisfied by

9 | the accused Yahoo! products, APT and RMX. At a minimum, there are disputed factual questions

10 | that preclude summary judgment because, as Augme argues, the law is clear that disputes about how

11 | the accused systems work or how the claims terms apply must be resolved by a jury, not on summary

12 | judgment. *Id.* at 2.

13 | Finally, Augme argues that it has proffered substantial evidence that Yahoo! actively induces

14 | and contributes to infringement of the asserted patent claims. *Id.* Augme argues that there is

15 | substantial evidence that Yahoo! knew about the patents-in-suit and yet it "knowingly encouraged

16 | infringing use of its ad serving systems." *Id.* The question of "specific intent" must be left to the jury

17 | to decide. *Id.*

18 | **III.   LEGAL STANDARDS**

19 | **A.   Summary Judgment Standard**

20 | Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

21 | and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

22 | any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

23 | 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine

24 | issue of material fact with respect to an essential element of the non-moving party's claim, or to a

25 | defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v.*

26 | *Catrett*, 477 U.S. 317, 323 (1986). Further, "*Celotex* requires that for issues on which the movant

27 | would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine

28 | issue of material fact," that is, "that, on all the essential elements of its case on which it bears the

1   burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of*

2   *Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). Once the movant has made this showing, the burden

3   then shifts to the party opposing summary judgment to designate "specific facts showing there is a

4   genuine issue for trial." *Id.* at 323. On summary judgment, the court draws all reasonable factual

5   inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986).

6   **B.     Infringement Standards**

7   A determination of infringement is a two-step process. *Wright Med. Tech., Inc. v. Osteonics*

8   *Corp.*, 122 F.3d 1440, 1443 (Fed. Cir. 1997). The first step is claim construction, which is a question

9   of law to be determined by the court. *Id.* The second step is an analysis of infringement, in which it

10  must be determined whether a particular device infringes a properly construed claim. *Id.* This

11  analysis is a question of fact. *Id.*

12  Infringement may be direct or indirect. *See BMC,* 498 F.3d at1378; *see also* 35 U.S.C. § 271.

13  "Direct infringement requires a party to perform or use each and every step or element of a claimed

14  method or product." *Id.* A device literally infringes if each of the elements of the asserted claims is

15  found in the accused device. *Id.* For method claims, direct infringement occurs where the accused

16  infringer performs all of the recited claim steps. Alternatively, direct infringement of a method claim

17  exists where the accused infringer performs some steps and exercises "control or direction" over

18  another party in the performance of the remaining steps, such that the accused infringer can be

19  characterized as the "mastermind" of the actions. *Muniauction*, 532 F.3d at 1329-30 (internal

20  quotations omitted); *accord, BMC,* 498 F.3d at 1379-82. This "control or direction" standard can be

21  "satisfied in situations where the law would traditionally hold the accused direct infringer vicariously

22  liable for the acts committed by another party that are required to complete performance of a claimed

23  method." *Id.* (citation omitted).

24  In the alternative, a device may infringe under the doctrine of equivalents "if every limitation

25  of the asserted claim, or its 'equivalent,' is found in the accused subject matter, where an 'equivalent'

26  differs from the claimed limitation only insubstantially." *Ethicon Endo–Surgery, Inc. v. United States*

27  *Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). While infringement is generally a question of

28  fact, *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366 (Fed. Cir. 1999), "[w]here the evidence is such

1   that no reasonable jury could determine two elements to be equivalent, district courts are obliged to

2   grant partial or complete summary judgment." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520

3   U.S. 17, 39, n.8 (1997).  Moreover, "if a theory of equivalence would entirely vitiate a particular

4   claim element, partial or complete judgment should be rendered by the court, as there would be no

5   further *material* issue for the jury to resolve." *Id.* (emphasis in original).

6          A patent may also be infringed indirectly.  A defendant may be liable for indirect infringement

7   if it "participates in or encourages infringement" by another *and* there is "a finding that some party

8   amongst the accused actors has committed the entire act of direct infringement." *Id.*  One form of

9   indirect infringement is contributory infringement.  *See PharmaStem Therapeutics, Inc. v. ViaCell,*

10  *Inc.*, 491 F.3d 1342, 1357-1358 (Fed. Cir. 2007) (explaining that the 1952 Patent Act codified the

11  judicially created doctrine of contributory infringement).  Under the Patent Act, contributory

12  infringement is defined as follows:

13          Whoever offers to sell or sells within the United States or imports into the United States a
            component of a patented machine, manufacture, combination or composition, or a material or
14          apparatus for use in practicing a patented process, constituting a material part of the invention,
            knowing the same to be especially made or especially adapted for use in an infringement of
15          such patent, and not a staple article or commodity of commerce suitable for substantial
            noninfringing use, shall be liable as a contributory infringer.
16
    35 U.S.C. § 271(c).
17
           A party who "actively induces infringement of a patent shall be liable as an infringer." 35
18
    U.S.C. § 271(b).  Under this provision, the "plaintiff has the burden of showing that the alleged
19
    infringer's actions induced infringing acts and that he knew or should have known his actions would
20
    induce actual infringements." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir.
21
    2006) (en banc).  A patentee may prevail on a claim of infringement by inducement where it shows
22
    direct infringement and that the alleged infringer knowingly induced infringement and specifically
23
    intended to encourage another's infringement.  *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683,
24
    697 (Fed. Cir. 2008).  The Supreme Court recently clarified that induced infringement "requires
25
    knowledge that the induced acts constitute patent infringement." *Global–Tech Appliances, Inc. v.*
26
    *SEB S.A.*, – U.S. –, 131 S.Ct. 2060, 2068, 179 L.Ed.2d 1167 (2011).  The Supreme Court explained
27
    that under this standard actual knowledge is not required, and that the intent may be shown under the
28

United States District Court

For the Northern District of California

1    willful blindness doctrine. *Id.* at 2068–70.

2    **IV.    YAHOO!'S SUMMARY JUDGMENT MOTION**

3        **A.    Whether RMX and APT Contain The Limitations of the Patents-in-Suit**

4        Yahoo! argues that Augme cannot meet its burden of demonstrating that Yahoo!'s allegedly

5    infringing systems, RMX and APT, practice the "service response" limitation required by both the

6    '691 and 636 Patents.  Yahoo! Motion at 16.  Yahoo! also asserts that Augme cannot establish that

7    RMX and APT have an "embedded first code module," a limitation required by both patents.  The

8    Court agrees.

9        **1.    RMX and APT Lack a "Service Response"**

10        In its Claim Construction Order, the Court construed "service response" to mean "a response

11    that indicates whether the downloaded web page is permitted to have access to a requested function,

12    and if yes, how the function should be presented on the web page." *See* Dkt. No. 192 at 18.  This

13    limitation appears in all of the independent claims at issue in both the '691 Patent and in the '636

14    Patent.  The Court concludes that, as a matter of law,  RMX and APT do not have such a service

15    response.

16        First with respect to RMX, Yahoo! argues that Augme has not even identified a service

17    response in its Infringement Contentions, let alone one that satisfies the Court's definition and

18    indicates the web page's permission to access the requested function.  Yahoo! Motion at 16-17.

19    Although Augme's expert Dr. Bahattacharjee states that RMX "assemble[s] a second code module

20    with a service response" Yahoo! correctly points out that he fails to identify what that service

21    response is and how this "service response" could satisfy the Court's construction of the term. *Id.* at

22    17.

23        Similarly, Yahoo! asserts that APT lacks a "service response' that satisfies the Court's claim

24    construction.  Yahoo! notes that has Augme not "settled on its own theory" and has variously argued

25    that the service response in APT is "the ad to be displayed by the Web page" (Ex. C at Claim Chart A

26    p. 6), a "JavaScript array," (Bhatt. at 19), "the result of rendering the advertisement," (Bhatt. Depo at

27    149), and finally, "code that forms the advertisement" (Bhatt. Depo. 2 at 3-4). Augme alleges that the

28    advertisements are the "requested function" and that the advertisement returned by APT is the

1  "service response." *Id.* (citing Ex. C at Claim Chart C p. 6). Because under Augme's theory, the

2  requested function and the service response are the same, there is no evidence (or explanation from

3  Augme) as to how this alleged "service response" indicates whether the downloaded page is permitted

4  to have access to the function. *Id.*

5       Augme counters that the "ad code" served by both APT and RMX meet the Court's

6  construction of "service response" and that, at a minimum, there are factual disputes on this point that

7  must be resolved by the trier of fact. Augme Opp. at 13. Specifically, in response to the ad tags, both

8  APT and RMX return a second code module with an "ad code" which Augme asserts *is* a "service

9  response" that satisfies the Court's construction of this term. *Id.* (citing Bhatt. ¶¶ 7, 13-14; Ex. 14,

10  Bhatt. Tr. Vol. I at 150:17-22; Ex. 15, Bhattacharjee Tr. Vol. II at 194:19-196:4). Augme argues that

11  Yahoo! provides this ad code when APT/RMX determines that the downloaded web page is permitted

12  to receive added functionality (*i.e.*, advertisement). Bhatt. ¶¶ 7, 13-14. The second code module also

13  indicates how the ad should be presented on the web page. *Id.* If advertisements are not permitted in

14  response to the ad tag, then the accused products indicate this denial of permission by returning a

15  default or blank ad code. Bhatt. ¶¶ 7,13; Chandra Tr. at 63:15-17. Augme disputes Yahoo!'s position

16  that a separate response – apart from the requested function – is required. *Id.* (citing Yahoo! Motion

17  at 17).

18       Yahoo! responds that, under Augme's latest theory, "returning a default or blank ad code"

19  indicates a lack of permission. *Id.* (citing Augme Opp. at 14.) Yahoo! notes that Augme's expert, Dr.

20  Bhattacharjee, never asserts in his expert report that the returning of blank ad code represents a lack

21  of permission. *See* Bhatt. Infr. Rpt. ¶¶ 69-136, 139-167. Yahoo! argues that a blank code cannot

22  meet the Court's "permission" requirement; rather:

23         At best, Augme's evidence establishes that RMX and APT sometimes determine that there is
           no advertisement matching the ad request (for instance, due to ad targeting criteria). (*See*
24         Bhatt. Infr. Rpt. ¶¶ 69-136, 139-167.) In those situations, according to Augme, "a default or
           blank ad code" is returned. (Opp'n at 14.) This is very different from determining that the
25         requesting web page lacks permission to access advertisements. This is the difference
           between, for example, a store clerk informing an adult customer that a particular wine is out of
26         stock, and the clerk informing a minor that he is not permitted to purchase wine. The former
           scenario demonstrates only a lack of suitable product, while the latter scenario is a denial of
27         permission.

28  Yahoo! Reply at 9.

12

United States District Court

For the Northern District of California

1    The Court concludes that the question of whether the accused products have a "service

2  response" within the meaning of the Court's construction is a matter of claim construction and does

3  not involve questions of disputed material fact as Augme contends. *See Gen. Mills, Inc. v. Hunt-*

4  *Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) ("Where the parties do not dispute any relevant facts

5  regarding the accused product . . . but disagree over possible claim interpretations, the question of

6  literal infringement collapses into claim construction and is amenable to summary judgment."). The

7  parties do not disagree as to any material facts about how the system functions. They only disagree as

8  to whether the return of an ad or of a blank code is a "permission" or lack thereof.

9    Failing to return an ad in response to an ad request is not a denial of permission to access a

10  requested function – it is a mere failure to return the requested function. The Court was clear in its

11  construction that a service response must indicate whether there is permission to access the requested

12  function. Blank code is just that - it is blank and therefore not a "permission" or "denial of

13  permission." Blank code does not indicate whether permission is granted or denied. Similarly,

14  provision of the ad (or ad code) is not itself "permission." Summary judgment of non-infringement

15  on the basis that the accused products lack a "service response" is GRANTED.[3]

16    **2.    RMX & APT Lack an "embedded first code module"**

17    Yahoo!'s next argument is that both RMX and APT lack an "embedded first code module" as

18  required by all of the asserted claims. The Court agrees.

19    The claims require, upon execution, that an embedded first code module "issue a . . .command

20  to retrieve," or "initiate[] retrieval of" a "second code module." This second code module has the

21  service response. Under Augme's theory, described above, the ad (or ad code) or the blank code

22  (where no add is returned) is the second code module. "Embedded" means that the first code module

23  is "written into the html of the web page" rather than incorporated via referencing or external linking.

24  *See* Dkt. No. 192 at 13-14. Yahoo! argues that neither RMX nor APT utilize a first code module that

25  is both "embedded" *and* satisfies the other claim requirements. Yahoo! Motion at 18. Yahoo! cites to

26  the litigation involving Augme in the Southern District of New York, *Augme Techs., Inc. v. Tacoda*

---

27

28    [3]Unlike the "embedded" limitation, Augme does not claim in its opposition that the "service response" limitation is infringed under the doctrine of equivalents.

1   *LLC*, No. 07 Civ. 7088 (S.D.N.Y. Nov. 14, 2011), ECF No. 184 (granting summary judgment of no

2   literal infringement based on a similar construction of "embedded").  The Court concludes that

3   Yahoo! is correct and summary judgment of non-infringement is granted.

4                    *a.*      *RMX Lacks an Embedded First Code Module*

5           Yahoo! argues that RMX does not contain a first code module that both: 1) is embedded and

6   2) retrieves the second code module containing the "service response."  Yahoo! Motion at 18.  As

7   Yahoo! correctly points out, the ad tag that is embedded in the web page, *i.e.*, written into the html, is

8   not the code that retrieves the ad from the RMX server.  *Id.*

9           Augme's response is unpersuasive.  Under its first theory, Augme asserts that ███████

10  ████████████████████

11  Under this theory, █████████████████

12  Augme asserts that ████████████

13          Yahoo! provides a diagram, which illustrates that ██████████████

14  ████████████████████████

15  ██████████████████

16  ████████████████████

17  ███

18  ██

19  █

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California



**United States District Court**
For the Northern District of California

1

2

3 ███████████████████████████████ Because ████████████████████

4 █████████████████████████████████████████████ it does

5 not literally infringe.

6 Under Augme's second infringement theory, ██████████████████████

7 █ ████████████████████████ ███████ In this alternative theory, █████████

8 ███████████████████████████ █ ██ Yahoo! provides a

9 depiction of this scenario below:

10 T

11 hi

12 s

13 alt

14 er

15 na

16 ti

17 ve

18 th

19 eo

20 ry

21 fa

22 re

23 s no better because ███████████████████, and thus fails to

24 satisfy the Court's construction of the term "embedded."   Rather, ██████████ is externally linked

25 via ████████  This sort of linking was specifically excluded by the Court's claim construction.

26 ──────────────────

27 [4]Yahoo! assumes that ██████████████████████████████████

28 █████████████████████████████████████████████████████████

1  Claim Const. at 14 ("the Court is convinced that 'embedding' does not include 'external linking'").

2  ███████████████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████   ███  ███

5  ███  Whether or not, *at execution*, this called code is written into the HTML of the web page (Bhatt.

6  Decl. ¶ 16), is irrelevant.  This ██████████ is obtained, not by "embedding" in the HTML of the web

7  page, but by external linking.  Because ████████ may be added later, it is by definition not included

8  in the original architecture of the web page.  RMX therefore does not practice the "embedded first

9  code module" limitation.

10      Augme also argues that █████████████████████████████████████████

11  ███████████████████████████████████████████████████████████████████

12  ████████[5]  The dispute centers around whether the embedded ad tag "initiates retrieval" of an ad code

13  from Yahoo! or issues a command to "retrieve" an ad code from Yahoo!.  *Id.* at 16.  Augme asserts

14  that "initiating retrieval" or issuing a command to retrieve does not mean that the first code module

15  must *complete* the process.  Augme argues that the claim requires initiating or commanding retrieval,

16  and contains no limitations precluding subsequent steps in accomplishing the retrieval of the second

17  code module.  Because Yahoo!'s embedded ad tag initiates retrieval of the second code module

18  through one or more additional steps, Augme asserts that the accused products meet this limitation.

19

20  [5]Augme asserts that Yahoo!'s motion does not apply to the RMX ███████ and the APT
    ███████ Opp. at 15.  Yahoo! responds with respect to the RMX ███████ that it noted in its
21  motion that Augme has failed to adduce any evidence that the ███████ alone is used to call ads.
    Yahoo! Motion at 20 n.2.  Yahoo! asserts: "Even if Augme had properly raised a theory vis-à-vis
22  the ███████ alone – which it has not – Yahoo! is entitled to summary judgment due to the complete lack
    of evidence."  Yahoo! Reply at 11.  The Court grants summary judgment for Yahoo! on the theory that
23  the RMX ███████ and/or the APT ███████ are embedded first code modules.  First, as Yahoo!
    notes, there is no reference to these tags in Augme's infringement contentions.  Second, Augme has not
24  presented evidence that these "tags" function as a first code module in the accused systems.  The entirety
    of Augme's showing in this regard consists of one sentence in its brief: it asserts that these are embedded
25  tags that "are direct calls" to the server, and cites only th Bhattacharjee Declaration, ¶11 and the Chandra
    Deposition at 88:23-89:3.  Augme Opp. at 15.  The Bhattacharjee declaration, ¶11, does not refer to an
26  ███████ and indeed Dr. Bhattacharjee admits that t███████████████████████████████████
    ████  Thus, the ███████ is not itself embedded.  In his deposition testimony, Chandra says
27  nothing about the ███████ specifically and merely recites that ███████████████████████████
    ███████████████████████████  █ █  ███  None of the evidence cited supports
28  an inference that either of these tags is an embedded first code module.

United States District Court

For the Northern District of California

1      To accept Augme's argument would essentially read "embedded" out of the claims. The court

2  resolved on claim construction whether that term could encompass linked code. The Court concluded

3  that it could not. If an additional "step" of retrieving or loading linked code that in fact calls the

4  second code module is permitted between the first code module and the second, that construction

5  would permit what has been excluded. As explained above, the embedded tag does not issue a

6  command to retrieve or initiate retrieval of the second code module as required by the claims; rather it

7  issues a command to download other code. ████████████████████████████

8  ████  The question of whether a command to download other code that ultimately results in the

9  retrieval of the second code module meets the claim limitations is a question of claim interpretation

10  and is appropriate for determination on summary judgment. *See MyMail, Ltd. v. Am. Online, Inc.*,

11  476 F.3d at 1378 ("Because there is no dispute regarding the operation of the accused systems, that

12  issue reduces to a question of claim interpretation and is amenable to summary judgment."). The

13  Court finds Yahoo!'s interpretation to be aligned with the Court's construction of the claim term

14  "embedded" and rejects Augme's alternative "intervening steps" argument.

                *b.*    *APT Lacks an Embedded First Code Module*

16      Yahoo! argues that Augme's infringement theory as to APT fails for the same reason: APT

17  does not have an embedded first code module that issues a command to retrieve the second code

18  module. As with RMX, Augme asserts two infringement theories. In the first theory, Augme asserts

19  that ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████

21  ████████ Augme asserts that ████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████ Augme contends further that ████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████

26      Yahoo! argues that Augme admits that ████████████████████████████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████



As Yahoo! explains, ████████████████

██████████████████████████████████████

██████ Yahoo! thus argues that ███

███████████████████████████████████

█████████████

The Court agrees.  The patents-in-suit require an embedded first code module to retrieve the second code module.  As explained above, "embedded" has been defined so that it does not include external linking.  Augme's expert agrees that the "ad tag" is embedded in the web page in the APT system.  Bhatt. Expert Report at ¶ 65 (attached as Ex. 1 to Bhatt. Decl.).  On execution, ██████

██████████████████ ██ ████████████

████████████████████████████████

█████████████████████████

Augme's alternative theory as to APT is that █████████████████

██████████████████████████████

███████████████████████████████

███████ This alternative scenario does not satisfy the requirement of an embedded code module for the same reasons that ██████████████ scenario for RMX fails to satisfy the "embedded" requirement. *Id.* ████████████

█████████████

c.    *RMX and APT Lack "embedded first code modules" Under the Doctrine of Equivalents*

Augme argues that even if the accused products do not literally infringe, they infringe under the doctrine of equivalents.  As to APT, the argument is that even though ██████ is not actually embedded in the web page,  the combination of the ██████ and the ██████ code is equivalent to the first code module.  Augme Opp. at 18.  Augme's position with respect to RMX is that when ██

████████████████████████████████

█████████████████████████████████

████████████████████████████████

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California



Yahoo! asserts that Augme's doctrine of equivalents arguments fails as to both accused products. Yahoo! responds that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Yahoo! explains the differences:

Yahoo! reiterates that there are "substantial differences, such as external code's reliance on a request to a separate server." Yahoo! Reply at 13. As a result, Augme cannot satisfy either the "insubstantial difference" test or the "function-way-result" test. *Id.* "Embedded code performs quite differently than externally linked code, as one requires a call to a separate server and the other does not." *Id.* Such a call to a server to retrieve code may fail and the call may fail to return code at all. *Id.* (citing Bhatt. Dep. Tr. At 136-138; see also Bhatt. Infr. Rpt. at 47). Yahoo! points to Augme's expert, Dr. Bhattacharjee, who states in his expert report that a key innovation of the claimed invention is "indirection," which refers to using a first code module to link to a second. Yahoo! Reply at 12 (citing Bhatt. Infr. Rpt. at 53-54). This external linking provides the benefit of "decoupl[ing] advertisers and publishers, and enable[ing] ad networks and exchanges such as APT and RMX to liaise between publishers and advertisers with no pre-existing relationship." (Bhatt. Infr. Rpt. at 54.) Yahoo! asserts that: "Augme cannot have it both ways: if external linking is a 'ground-breaking' feature of the patented invention (Opp'n at 2), it cannot be 'insubstantially different' from the alternative, which is embedding code." *Id.*

As explained above, the Court has ruled in its Claim Construction Order that the term "embedded" does not include code that is externally linked. Augme's argument is tantamount to a

1  finding that embedded does not actually mean "embedded." "Embedded" and "linked" code cannot

2  mean the same thing and thus cannot possess only insubstantial differences. *See Scimed Life Sys. v.*

3  *Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) (a "structural feature that

4  was the opposite of the one recited in the claim . . . could not be brought within the scope of patent

5  protection through the doctrine of equivalents"); *Wleklinski v. Targus, Inc.*, 258 Fed. Appx. 325,

6  329-30 (Fed. Cir. 2007) ("the fundamental opposite of the claimed invention" cannot infringe by

7  equivalents as a matter of law).   Augme's argument amounts to a statement that linked code is the

8  same as embedded code.  Such an argument reads a structural requirement out of the claims, *i.e.*, an

9  *embedded* first code module that retrieves a second code module.

10       Accordingly, the Court finds that summary judgment in Yahoo!'s favor is appropriate and that

11  the accused products do not infringe under the "doctrine of equivalents."

12

13       **B.       Whether the Divided Infringement Doctrine Precludes Liability for Infringement**

14                **as to the '636 and '691 Patents**

15       Because the Court concludes that, as a matter of law, the accused systems do not practice two

16  elements of the claims, and that therefore summary judgment of non-infringement is appropriate, the

17  court need not address the question of "divided infringement."

18       **C.       Whether Yahoo! is Entitled to Summary Judgment of No Indirect Infringement**

19       Finally, Yahoo! argues that because there can be no direct infringement (for the reasons stated

20  above), there can be no indirect infringement.  Yahoo! Motion at 24 (citing *Dynacore Holdings*, 363

21  F.3d at 1272 ("Indirect infringement, whether inducement to infringe or contributory infringement,

22  can only arise in the presence of direct infringement. . . .").  Because the Court has found no direct

23  infringement as a matter of law, there can be no finding of indirect infringement.

24

25

26

27

28

## VI.    CONCLUSION

For the foregoing reasons, Yahoo!'s Motion for Summary Judgment is GRANTED.  Augme's Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

Dated: August 8, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

AUGME TECHNOLOGIES, INC.,      Case Number: CV09-05386 JCS

         Plaintiff,        **SEALED CERTIFICATE OF SERVICE**

    v.

YAHOO!, INC.,

         Defendant.             /

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 8, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Charles Foster Koch M
Goodwin Procter
135 Commonwealth Drive
Menlo Park, CA 94025

Gregory S. Bishop
Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

James Ryan Gilfoil M
Morrison & Foerster LLP
425 Market St., 29th Floor
San Francisco, CA 94105-2428

Richard S.J. Hung
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

Dated: August 8, 2012             *Karen L. Hom*

                         Richard W. Wieking, Clerk
                         By: Karen Hom, Deputy Clerk

Richard S.J. Hung
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

CV09-05386 JCS

James Ryan Gilfoil M
Morrison & Foerster LLP
425 Market St., 29th Floor
San Francisco, CA 94105-2428


CV09-05386 JCS